## In re HARVEY.

## (Appeal of CHAMPLIN.)

## No. 18,004; March 7, 1893.

### 32 Pac. 567.

**Insolvency.**—On a Contest of a Claim Against an Insolvent's estate, it appeared that the insolvent had become indebted to claimant's assignor, B., for the price of certain land and merchandise, and gave him the notes constituting the claim in question. As part of the same transaction, B. gave a bond conditioned to convey the land to the insolvent on payment of the amount of the notes. Held, that the title to the land was reserved to secure the entire debt, and that the claim was properly rejected where claimant attempted to prove the full amount of the notes, without either deducting the value of the land, as. required by section 44 of the insolvency act, or conveying his interest in it to the assignee.

**Insolvency.**—Costs Incurred in Wrongful Attachment against the estate of an insolvent cannot be recovered, under section 65 of the insolvency act, as said section applies only to costs which would have been a legal charge.

APPEAL from Superior Court, Modoc County; G. G. Clough, Judge.

Proceedings in the matter of the insolvency of T. M. Harvey. Certain orders were made refusing claims presented by George Champlin, and settling the assignee's account, from which Champlin appeals. Affirmed.

M. P. Chipman and D. W. Jenks for appellant; W. Rigby and J. J. May for assignee; E. E. Copeland for insolvent.

TEMPLE, C.—This appeal is from two orders made in the proceedings in the matter of the insolvency of T. M. Harvey. By one order the court refused to allow two claims presented by the appellant against the estate of the insolvent. By the order it settled the final account of the assignee, and distributed the proceeds of the estate, without considering the objections of appellant to the account or the proposed order. As appellant had no interest in the insolvent's estate after his

two claims were rejected, it is obvious that, if the first order was correctly made, appellant was not injured by the second. It does not appear when the proceedings in insolvency were commenced, but the adjudication was made at the instance of the creditors of T. M. Harvey, September 19, 1890. On the 2d of November, 1890, Champlin filed his claims, verified by his affidavit, as required by the insolvent act. Upon notice given by the assignee that he would contest the claims, the matter was submitted upon affidavits, and the claims were held not provable against the insolvent and rejected. Among others, the affidavit of T. M. Harvey, the insolvent, was read, from which it appeared that the insolvent and J. L. Harvey became indebted to one J. H. Beecher on the twenty-seventh day of September, 1889, in the sum of $4,110, for certain merchandise and for a lot in the town of Adin, county of Modoc. For this sum the debtors gave three notes, each payable to the order of the makers, and then indorsed by them and delivered to said Beecher. They were all payable one day after date. At the same time, and as part of the same transaction, and as part consideration for the notes, Beecher executed and delivered to them his bond, conditioned "that, if the above bounden obligor shall on or before the 1st day of August, 1891, make, execute, and deliver unto said T. M. Harvey and James L. Harvey (provided that the said T. M. Harvey and James L. Harvey shall on or before that day have paid to the said obligor the sum of four thousand one hundred and ten dollars gold coin of the United States of America) a good and sufficient conveyance," etc. Beecher, of course, retained the title to the land, and, so far as shown, still retains it. In June, 1890, affiant states, Beecher transferred the notes to Champlin, who is his brother in law, and who took the notes with full notice of all the facts. On the 18th of July, 1890, Champlin commenced a suit upon the notes in the superior court of Tehama county, and caused an attachment to be issued, which was levied upon the property of the insolvent in the county of Modoc. Just two months afterward T. M. Harvey was adjudged an insolvent. A motion was made in the court in which the attachment suit was pending to dissolve the attachment on three grounds: (1) The indebtedness was secured; (2) was not due; and (3) T. M. Harvey had been adjudged an insolvent. When the motion

was made does not appear, but it must have been after the adjudication. It was granted November 12, 1890. The order dissolving the attachment does not state upon what ground it was dissolved, but it is evident that the attachment was improperly sued out, for the land was held in trust as security for the debt even in the hands of Beecher's assignee: Gessner v. Palmatecr, 89 Cal. 89, 13 L. R. A. 187, 24 Pac. 608, 26 Pac. 789. Besides, if the insolvency proceedings had been commenced within one month after the attachment, the adjudication would have ipso facto operated as a dissolution, and no such motion would have been required.

Appellant's affidavit denies that appellant knew of the existence of the supposed security when he purchased the notes, and he contends that the value of the lot is much less than the debt, and that the purchase price of the land formed an inconsiderable part of the consideration for the notes. By the terms of the bond, however, which may be considered a declaration of a trust by Beecher, it is evident that the Harveys would be compelled to pay the entire debt before they could demand a deed. If, therefore, the bond constituted security for the payment of the notes, in the hands of the assignee, at all, it was for the full amount. Appellant did not attempt to prove his claim for the balance of the debt after deducting the value of the security, as provided in section 44 of the insolvent act. Indeed, he could not do this unless he could agree with the assignee as to the value of the security. But he made no effort in that direction, for he claimed that he had no security, and was entitled to prove his full debt. Of course, for the same reason, he did not convey his claim upon the property to the assignee, and permit the property to be sold under the order of the court. The claim, therefore, was properly rejected by the court.

The second claim presented by Champlin against the estate of the insolvent was for $713.33, being the costs incurred in the attachment proceedings. It is evident that the attachment was wrongfully sued out. Under such circumstances appellant could not have recovered such costs from the defendant if he had not been adjudged an insolvent. As the proceedings in insolvency are for the purpose of appropriating the property of the insolvent to the payment of his debts, it must follow that such costs could not be allowed against his

estate. The provisions of section 65 of the insolvency act can only apply to costs which would have been a legal charge against the insolvent. I think the order should be affirmed.

We concur: Haynes, C.; Belcher, C.

PER CURIAM.—For the reasons given in the foregoing opinion the orders are affirmed.