**Aram A. HARTUNIAN, Petitioner—Appellee,**

and

**Leroy's Horse and Sports Place, Plaintiff—Counter—defendant,**

v.

**Michael RACUSIN, Defendant—Counter—claimant—Appellant,**

and

**American Wagering, Inc., Counter—defendant.**

Aram A. Hartunian, Petitioner—
Appellant,

and

Leroy's Horse and Sports Place,
Plaintiff—Counter—
defendant,

v.

Michael Racusin, Defendant—
Counter—claimant—
Appellee,

and

American Wagering, Inc.,
Counter—defendant.

Leroy's Horse and Sports Place,
Plaintiff—Counter—defen-
dant—Appellee,

v.

Michael Racusin, Defendant—
Counter—claimant—
Appellant,

and

American Wagering, Inc.,
Counter—defendant.

Aram A. Hartunian, Petitioner—
Appellant,

and

Leroy's Horse and Sports Place,
Plaintiff—Counter—
defendant,

v.

Michael Racusin, Defendant—
Counter—claimant—
Appellee,

and

American Wagering, Inc.,
Counter—defendant.

Nos. 03–16245, 03–16434,
03–16248, 03–16378.
D.C. No. CV–S–95–927–HDM.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 4, 2004.

Decided Jan. 14, 2005.

Aram A. Hartunian, Esq., Chicago, IL, pro se.

C. Stanley Hunterton, Esq., Samuel B Benham, Hunterton & Associates, Las Vegas, NV, for Plaintiff–Counter–Defendant.

Dennis L. Kennedy, Esq., Kyle O. Stephens, Esq., Lionel, Sawyer and Collins, Las Vegas, NV, for Defendant–Counter–Plaintiff–Appellee.

Before MESKILL,* TROTT, and McKEOWN, Circuit Judges.

## MEMORANDUM **

This is a consolidated appeal from two orders of the United States District Court for the District of Nevada (McKibben, J.). In one appeal, the party who prevailed below, Michael Racusin, appeals from the district court's May 30, 2003, refusal to award him prejudgment interest (the "Prejudgment Interest Order"). In the other appeals, Racusin and his former attorney, Aram Hartunian, cross-appeal from a June

---

* The Honorable Thomas J. Meskill, Senior Judge for the United States Court of Appeals for the Second Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–6.

9, 2003, award of attorney's fees (the "Fee Award"). Familiarity with the relevant facts and procedural history is presumed. *See Leroy's Horse and Sports Place v. Racusin,* 182 F.3d 926 (9th Cir.1999) (unpublished) (*"Leroy's I"*); *Leroy's Horse and Sports Place v. Racusin,* 21 Fed.Appx. 716 (9th Cir.2001) (unpublished) (*"Leroy's II"*).

### The Fee Disputes

"A request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). Unfortunately, in this case, this dictate has already been transgressed. This is the second time that we have addressed the issue of attorneys' fees in this ... action. It will also be the last. *Florin v. Nationsbank of Georgia, N.A.,* 60 F.3d 1245, 1246–47 (7th Cir.1995).

The Fee Award is reviewed for abuse of discretion. *See Horphag Research Ltd. v. Pellegrini,* 337 F.3d 1036, 1042 (9th Cir. 2003), *cert. denied,* 540 U.S. 1111, 124 S.Ct. 1090, 157 L.Ed.2d 900 (2004). A district court abuses its discretion when it applies an incorrect legal standard or makes clearly erroneous findings of fact. *United States v. Cal-Almond, Inc.,* 102 F.3d 999, 1003 (9th Cir.1996). Consistent with our earlier decision in this case, we analyze the fee dispute under Illinois law. *See Leroy's II,* 21 Fed.Appx. at 718.

### I. Racusin's Appeal of the Fee Award

■ The district court did not abuse its discretion in calculating the *quantum meruit* value of Hartunian's services, including time spent up to and including the first trial, because Racusin and Hartunian's August 27, 1995 fee agreement was neither enforceable nor discharged. According to the 1995 Fee Agreement, Hartunian was entitled to a percentage of any "amount recovered," defined as "the value of anything received by suit or settlement." Because the first jury award was reversed on appeal, *see Leroy's I,* 182 F.3d 926, Racusin did not "recover" anything and Hartunian was not entitled to any fee under the 1995 Fee Agreement. Leroy's payment of the judgment after the first trial but before it was reversed (and Hartunian's taking of his fees out of the payment) is immaterial; the award itself was a nullity once it was reversed on appeal.

Thus, even though Hartunian received money in connection with his representation of Racusin at the first trial, that money was not ultimately due him under the 1995 Fee Agreement. Hartunian therefore received nothing to which he was entitled under the 1995 Fee Agreement, nor could he now sue to enforce it. "When a client terminates her attorney, the contingent-fee contract ceases to exist, and the contingency term is no longer operative." *Much Shelist Freed Denenberg and Ament, P.C. v. Lison,* 297 Ill.App.3d 375, 231 Ill.Dec. 625, 696 N.E.2d 1196, 1199 (1998). Accordingly, Hartunian's only valid theory of payment for his services is via *quantum meruit. See Rhoades v. Norfolk & W. Ry. Co.,* 78 Ill.2d 217, 35 Ill.Dec. 680, 399 N.E.2d 969, 975 (1979). The district court therefore acted properly when it calculated Hartunian's fees based on the *quantum meruit* value of his entire representation of Racusin. Moreover, because Hartunian dropped his demand for prejudgment interest on his fees, Racusin is not entitled to be credited for interest on his prior payment. The district court therefore correctly calculated the *quantum meruit* value of Hartunian's fee.

■ We also disagree with Racusin's argument that the district court erred when it awarded Hartunian $52,650 in fees earned by Larry C. Johns, Racusin's local counsel. In this case, the district court

concluded as a factual matter that "Mr. Racusin did agree to Mr. Johns [sic] representation with Mr. Hartunian." Racusin has pointed to no evidence suggesting that this finding was erroneous. Johns was therefore entitled to his fees.

Racusin next objects that Hartunian lacks standing to seek Johns' fees. However, because Hartunian has already paid Johns out of his own pocket, we deem Johns to have assigned his claim to Hartunian. The district court therefore properly reimbursed Hartunian for Johns' fees.

## II. Hartunian's Appeal of the Fee Award

■ Hartunian argues that in addition to his fees, he was entitled to expenses. Absent a contract to the contrary, an attorney is generally entitled to be reimbursed for reasonable expenses incurred in the course of representing a client. *See J.B. Esker & Sons, Inc. v. Cle–Pa's Partnership*, 325 Ill.App.3d 276, 259 Ill.Dec. 136, 757 N.E.2d 1271, 1280 (2001); *see also* 7A C.J.S. *Attorney & Client* § 370 (2004). In this case, the 1995 Fee Agreement (as well as another fee agreement, dated August 18, 1997) also provided that Racusin would reimburse Hartunian for any costs, separate and apart from his fees, if there was a recovery.

The district court—which had previously awarded Hartunian costs—gave no reason for not doing so now. This was either an abuse of discretion or an oversight. In either case, because the district court previously determined Hartunian's expenses to be reasonable, no remand is necessary on this issue. There is, however, considerable question about the amount of prejudgment interest to which Hartunian is entitled on his expenses. We called for supplemental briefing on this question, which was inconclusive; nor is there sufficient evidence in the record to permit us to make a reliable calculation in the first place. We therefore remand so that the district court can determine the proper prejudgment interest on Hartunian's expenses.

■ Hartunian next argues that the district court abused its discretion in declining to award him fees earned by a number of attorneys who assisted him in the case. We agree with the district court that Hartunian presented no evidence of an agreement by Racusin to employ them, with one exception.

Hartunian repeatedly refers to Karl Leinberger as his "associate" or "employee." And indeed, the 1995 Fee Agreement was a contract between Racusin and "Aram A. Hartunian & Associates, P.C." Because Leinberger was a member of Hartunian's firm, Hartunian is entitled to collect fees for his services.

■ Finally, Hartunian argues that the district court erred in refusing to apply a multiplier to his lodestar figure, *i.e.,* it awarded Hartunian his hourly rate times the number of hours he worked. A district court's determination of a risk multiplier is reviewed deferentially, *see In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1301 n. 11 (9th Cir. 1994), and we will afford the district court broad discretion in view of its "close observation of the attorney's work and the trial judge's deeper understanding of the skill and time required in the case," *Wegner v. Arnold*, 305 Ill.App.3d 689, 238 Ill.Dec. 1001, 713 N.E.2d 247, 250 (1999).

"In making its determination, the trial court should assess all of the relevant factors, including the time and labor required, the attorney's skill and standing, the nature of the cause, the novelty and difficulty of the subject matter, the attorney's degree of responsibility in managing the case, the usual and customary charge for that type of work in the community, and

the benefits resulting to the client." *Id.; see also Cooke v. Gove,* 61 Nev. 55, 114 P.2d 87, 89 (1941) (listing similar factors). These are precisely the factors identified and considered by the district court. It determined that Hartunian ably represented Racusin in a routine matter, such that Hartunian was adequately compensated by his usual hourly rate. Moreover, the court remarked that Hartunian's rate and the number of hours billed were "on the high end of the scale," suggesting a sort of *de facto* multiplier.

Hartunian makes much ado of the contingent risk he endured. However, under Illinois law, "[t]o justify a fee enhancement, the risks assumed by the attorney must be greater than those normally assumed in contingent fee matters and the benefits derived by the client as a result of the efforts of the attorney must be greater than could normally have been expected under the circumstances." *Anderson v. Anchor Org. for Health Maint.,* 274 Ill. App.3d 1001, 211 Ill.Dec. 213, 654 N.E.2d 675, 682 (1995); *see also Merritt v. Mackey,* 932 F.2d 1317, 1324 (9th Cir.1991).

Hartunian has made no such showing here. To the contrary, the contingent risk in this case was relatively low—there was a written contract that Leroy's had plainly breached. The critical question was damages. In such a case, it would have been easy to attract other counsel. This was not a case, for example, like *Fadhl v. City and County of San Francisco,* 859 F.2d 649, 651 (9th Cir.1988), where we affirmed a multiplier in a case where the plaintiff had been rejected by 35 attorneys before one finally took her case. The court was well within its discretion in declining to apply a risk multiplier.

### The Prejudgment Interest Order

■ Racusin appeals from the Prejudgment Interest Order, which we review for abuse of discretion. *See Champion Produce, Inc. v. Ruby Robinson Co., Inc.,* 342 F.3d 1016, 1020 (9th Cir.2003). Both parties agree that the award of prejudgment interest is governed by Nevada law because jurisdiction is based on diversity. *See In re Cardelucci,* 285 F.3d 1231, 1235 (9th Cir.2002).

In Nevada, "prejudgment interest is recoverable as a matter of right in actions upon contracts for all money from the time it becomes due." *Schoepe v. Pacific Silver Corp.,* 111 Nev. 563, 893 P.2d 388, 389 (1995) (per curiam); *see also Clark County v. Mullen,* 91 Nev. 172, 533 P.2d 156, 158 (1975). Specifically, Nevada law permits prejudgment interest "upon all money from the time it becomes due" at the prime rate plus two percent. Nev.Rev. Stat. 99.040(1) & (a).

As a matter of accounting, "[t]hree items must be determined to enable the trial court to make an appropriate award of interest: (1) the rate of interest; (2) the time when it commences to run; and (3) the amount of money to which the rate of interest must be applied." *Paradise Homes, Inc. v. Central Sur. and Ins. Corp.,* 84 Nev. 109, 437 P.2d 78, 83 (1968). Leroy's argues, and the district court held, that because the exact amount of Racusin's damages was unknowable until after the third trial, interest could not have commenced running until then. But we rejected precisely this argument in *In re Sigel & Co., Ltd.,* 923 F.2d 142, 146 (9th Cir.1991). *See also Schoepe,* 893 P.2d at 389; *Southdown, Inc. v. McGinnis,* 89 Nev. 184, 510 P.2d 636, 642 (1973).

Here, the contract between Racusin and Leroy's contained a definitive provision for valuing Racusin's services. Under the agreement, he was entitled to "4½% of the final evaluation in the form of Leroy's common stock and $150,000 in cash." It "is quite immaterial" that two jury verdicts

were required to turn the valuation formula into a dollar figure. *Southdown,* 510 P.2d at 642. As in *Sigel,* the district court conclusively determined both the time of breach and the amount owed to Racusin. Therefore, Racusin is entitled to prejudgment interest on $2,160,000 from May 16, 1996, at the statutory amount, less the interest he has already received for the time period after November 14, 2002. Racusin calculates this amount at $1,383,036.15; Leroy's does not dispute it.

## CONCLUSION

To summarize, the Fee Award is affirmed in all respects, except, in addition to the award made by the district court: (1) Hartunian is awarded the *quantum meruit* value of Leinberger's services in the amount of $24,622; and (2) he is awarded expenses of $31,539.38. The Prejudgment Interest Order is reversed, and Racusin is awarded prejudgment interest from Leroy's in the amount of $1,383,036.15. We must remand to the district court, however, to determine the appropriate amount of prejudgment interest owed to Hartunian on his expenses.

The judgment of the district court is REVERSED with respect to case number 03–16378, and AFFIRMED with respect to case number 03–16245. With respect to case numbers 03–16248 and 13–16434, the judgment of the district court is AFFIRMED IN PART and REVERSED IN PART, with the additional awards noted above, and REMANDED.

---

*\* The panel unanimously finds this case suitable for decision without oral argument. See Fed.*